## FARMERS UNION LIVESTOCK ASS'N· v. SAINT PAUL UNION STOCK-YARDS CO.

### No. 1305.

United States District Court
D. Montana, Billings Division.
April 19, 1951.

Sterling M. Wood, Robert E. Cooke and Fredric Moulton, all of Billings, Mont., and Charles E. Nieman, Minneapolis, Minn., for plaintiff.

H. J. Coleman, Wm. J. Jameson, and Arthur F. Lamey, all of Billings, Mont., and David L. Grannis, South St. Paul, Minn., for defendant.

MURRAY, District Judge.

The allocation by a stockyards operator of pens and the relative location of those pens based upon the amount of business done by the firms to which space and location is assigned is not in itself an unjust, unreasonable or discriminatory practice.

Does such a practice become unjust, unreasonable or discriminatory in the light of the fact that the pens and relative location of them were originally assigned upon a different basis, to-wit: allocation of location based on priority in time of entering business at the yard? The Court does not believe so. Neither under its contract with

the defendant, nor by the Stockyards Act is the plaintiff entitled to the use or continued use of any particular pens or location in the yard.

The act protects the plaintiff from unreasonable, unjust and discriminatory practices, by the defendant, but the business management is left in the controls of the stockyards company and the contract between the parties recognizes this.

The alleged incidental advantages, such as availability to patrons, which may accrue to a particular location, are not such as give the plaintiff the right to a continued occupancy of that location as against the right of the management to exercise its business discretion fairly, reasonably, justly and not discriminatorily.

### Findings of Fact
### and
### Conclusions of Law

The hearing on plaintiff's motion for a temporary injunction having come on regularly to be heard before the Court on plaintiff's verified complaint and affidavits, defendant's verified answer and the testimony of witnesses on behalf of plaintiff and defendant, and the Court having heard and considered the evidence, now makes its Findings of Fact and Conclusions of Law as follows:

### Findings of Fact

#### I

That the action arises under the "Packers and Stockyards Act, 1921", August 15, 1921, c. 64, 42 Stat. 159, as amended, U.S.C.A., Title 7, §§ 181–231, as hereinafter more fully appears, being an act regulating commerce within the terms and meaning of the act of June 25, 1948, c. 646, 62 Stat. 931, U.S.C.A. Title 28, § 1337.

#### II

That plaintiff is now, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Minnesota, and duly registered and authorized to transact business in the State of Montana; that the said plaintiff is now, and at all times herein mentioned was, engaged in the business of cooperatively marketing livestock on a commission basis and as a commission merchant, and duly registered, as a market agency, with the United States Secretary of Agriculture, pursuant to said Packers and Stockyards Act, 1921, as amended.

#### III

That defendant is now, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Minnesota, and engaged in the business of operating public stockyards and furnishing stockyard services as a stockyard owner in the cities of South St. Paul, Minnesota, and Billings, Montana; that the said defendant, its said business, and said stockyards are now, and at all times herein mentioned were subject to the provisions of the "Packers and Stockyards Act, 1921", August 15, 1921, c. 64, 42 Stat. 159, as amended, U.S.C.A., Title 7, §§ 181–231, and that said stockyards have been duly posted by the United States Secretary of Agriculture as provided in said act.

#### IV

That from the opening of said stockyards on September 23, 1940, until the present time, the plaintiff has used and occupied cattle pens in the same relative position in defendant's stockyards at Billings; that from the opening of said stockyards on September 23, 1940, to the present time three commission firms, to-wit: Farmers Union Livestock Association, Charles L. Govern & Co., and Central Livestock Association, have been continuously and now are engaged in business as livestock commission merchants in said stockyards; that Sig Ellingson & Co. first commenced transacting business as a commission merchant at said stockyards in the month of September, 1945, and ever since has been transacting and does now transact such business at said stockyards; that ever since the opening of said stockyards on September 23, 1940, the relative locations of the cattle pens occupied by said three commission companies first named has been, and is now, in terms of proximity

to the chute house in said stockyards and from North to South, as follows: First, Farmers Union Livestock Association; Second, Charles L. Govern & Co.; Third, Central Livestock Association; that ever since on or about the latter part of 1945, said Sig Ellingson & Company has used and occupied and does now use and occupy certain cattle pens in the fourth relative location, that is, at the southerly end of the cattle pens used and occupied by commission companies in said stockyards.

## V

That on March 29, 1951, defendant delivered to plaintiff, and plaintiff received from defendant a notification in words and figures as follows, to-wit:

"Billings, Montana
March 28, 1951

Effective April 1, 1951, pens in the Billings Public Stockyards are assigned to Farmers Union Livestock Association as follows:

| Block 41 | Pens 34 | Pens 51 | Pens 66 | Pens 62 |
|---|---|---|---|---|
| | 35 | 52 | 67 | 63 |
| | 36 | 53 | 68 | 64 |
| | 37 | 54 | 69 | |
| | 38 | 55 | 70 | 43 |
| | 39 | 56 | 71 | 44 |
| | | 57 | | |
| | 46 | 58 | | |
| | 47 | 59 | | |
| | 48 | 60 | | |
| | 49 | 61 | | |
| | 50 | | | |

The assigned yarding pens are for no definite period of time and will be changed according to the percentage of business handled by the various firms.

This assignment cancels all previous assignments.

/s/ Dale Wilder
General Manager
Billings Public Stockyards"

and that said proposed change had not been made known to plaintiff or discussed with plaintiff prior to delivery of said notice.

## VI

That the cattle pens which defendant proposes to assign to plaintiff, as set forth above in Paragraph V, are situated at the extreme end of said stockyards, most distant from the location of the pens now used and occupied by plaintiff.

## VII

That the said Sig Ellingson company does the most cattle business in said stockyards and that in the order of cattle business in said yards Sig Ellingson & Co. is first, Central Livestock Association is second, Farmers Union Livestock Association is third and Charles L. Govern & Co. is fourth; that defendant proposed to assign cattle pens to Charles L. Govern & Co. which are nearer to the chute house than pens proposed to be assigned to the plaintiff, but defendant advised plaintiff that this proposed assignment was made for plaintiff's benefit, and that if plaintiff so desired, cattle pens would be assigned to it at a location which would place them nearer the chute house than the pens assigned to Charles L. Govern & Co.

## VIII

That the said re-allocation of pens at the stockyards was made by defendant in the exercise of its business discretion in

542

the management of its stockyards, and that said re-allocation is reasonable, fair and not discriminatory.

## IX

The evidence fails to show that the act of the defendant in re-allocating cattle pens was arbitrary, unreasonable or unfairly discriminatory.

## X

The evidence fails to show that the re-allocation of cattle pens will damage the plaintiff's business, reputation, prestige or good will.

## XI

That there is no evidence to show that the plaintiff will suffer or sustain substantial, irreparable or any loss because of said re-allocation.

## XII

That the evidence has failed to sustain the material allegations of the complaint.

From the foregoing Findings of Fact the Court draws the following

## Conclusions of Law

## I

That this Court has jurisdiction herein.

## II

That the restraining order heretofore made and issued by this Court on the 6th day of April, 1951, at 3:57 o'clock P. M., should be dissolved.

## III

That the plaintiff's application for a temporary injunction should be denied.

## Order

The plaintiff's motion for temporary injunction in this cause having come on regularly for hearing at Billings, Montana, April 17, 1951, and the Court having heard evidence and arguments of counsel and thereupon made findings of fact and conclusions of law, and in pursuance thereto:

It is hereby ordered, that the temporary restraining order heretofore made by this Court on the 6th day of April, 1951, at 3:57 o'clock P. M., against the defendant, be and the same is hereby dissolved;

It is further ordered, that the motion of the plaintiff for a temporary injunction be and the same is hereby denied.